IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:17-cv-00712-MR

| | |
|---|---|
| RONALD McCLARY,        )<br>                              )<br>        Plaintiff,    )<br>                              )<br>vs.                          )<br>                              )<br>FNU GRAHAM,             )<br>                              )<br>        Defendant.   )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 33].

**I.    PROCEDURAL BACKGROUND**

The Plaintiff Ronald McClary, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at the Lanesboro Correctional Institution ("Lanesboro C.I.").[1] [Doc. 1]. The Complaint asserts an excessive force claim against Lanesboro CI employee Officer FNU Graham ("Officer Graham") for allegedly slamming Plaintiff's finger in the food passage door of Plaintiff's cell. [Id.]. The Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2)

---

[1] The Plaintiff has been transferred several times since his incarceration at Lanesboro CI. He is now housed at Bertie Correctional Institution in Windsor, North Carolina.

and 1915A and Plaintiff was allowed to proceed with his excessive force claim. [Doc. 9].

On January 25, 2019, Officer Graham moved for summary judgment of Plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 33]. In support of his summary judgment motion, Officer Graham submitted a memorandum, his own Declaration, and the Declarations of a several other employees of Lanesboro CI, including certain prison records. [Docs. 33-1 through 33-5, 35].

On January 28, 2019, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 36]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [<u>Id.</u> at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [<u>Id.</u> at 2 (citing Fed. R. Civ. P. 56(c)(1)(a)]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Doc. 36 (citing Fed. R. Civ. P. 56(c)(4))]. The Plaintiff filed 13 handwritten pages in response to Officer Graham's summary judgment motion. [Doc. 38]. These consist of three documents: (1) "Plaintiff McClary Opposition to defendant Graham Motion for Summary Judgment" [Doc. 38], consisting of seven pages; (2) "Memorandum in Opposition of Defendant Motion for Summary Judgment" [Doc. 38-1], consisting of four pages; and (3) "Plaintiff Appendix in Opposition of Defendant Motion for Summary Judgment" [Doc. 38-2], consisting of two pages plus attachments. None of these documents, however, are signed under oath or under penalty of perjury. Moreover, they all consist of argument as to why the Defendant's evidence should not be believed and how corrupt the prison administration is, giving examples of other unrelated cases. The closest thing to a factual assertion among these documents is actually in the Memorandum [Doc. 38-1] in which the Plaintiff states "McClary has a broke finger and nobody can say where it happened but McClary. Dec. 30 2015 (*sic*)" [Id. at 2]. Plaintiff, however, presents no evidence as to what happened, resting solely upon his allegations. Plaintiff

3

also attached to his Appendix two unauthenticated prison policies, as well as documents that appear to relate to other § 1983 cases Plaintiff has brought in the United States District Court for the Eastern District of North Carolina.[2] [See Doc. 38-2]. The policies, however, if authentic, do not support Plaintiff's assertions. Likewise, the documents pertaining to other claims prove nothing regarding this claim. Thus, in terms of evidentiary forecast, the Defendant's is unrefuted.

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[2] Since 2014, the Plaintiff has filed 25 lawsuits in the Eastern District of North Carolina, five lawsuits in the Middle District, and 14 lawsuits in the Western District. [Doc. 33-5 at ¶¶ 5-7: Declaration of Stephen M. Degaetano (citing Doc. 33-5 at 3-11)].

4

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

5

party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.   FACTUAL BACKGROUND

In his Complaint, Plaintiff alleged that on December 30, 2015, Officer Graham slammed Plaintiff's finger in the "trap door" of Plaintiff's cell while the Plaintiff was holding his food tray there for Officer Graham to examine. [Doc. 1 at 3]. Plaintiff alleges he did not threaten Officer Graham in any way and Officer Graham was not in any danger. [Id. at 4]. Plaintiff also alleges that medical attention was denied and there "is video proof and x-rays to prove it." [Id.].

The evidentiary forecast before the Court, which consists of affidavits from various prison employees and officials, demonstrates the absence of a genuine issue of material fact on Plaintiff's claim.

Plaintiff is serving a life sentence for first-degree murder. [Doc. 33-1 at ¶ 7: Declaration of Anthony Allen (citing Doc. 33-1 at 7)]. Plaintiff has been incarcerated since April 2001. Since that time, Plaintiff has committed 118 infractions, including disobeying orders, threatening to harm staff, and assault on an inmate. [Doc. 33-1 at ¶ 8 (citing Doc. 33-1 at 9-12)]. At the time of the alleged incident, Plaintiff was housed in Anson Unit. [Doc. 33-1

6

at ¶ 9]. Anson Unit is a segregation unit, which generally houses inmates who have committed infractions or are deemed a threat to staff or to the general inmate population. [Doc. 33-1 at ¶ 9].

At the relevant times, Officer Graham was a correctional officer at Lanesboro CI. [Doc. 33-2 at ¶ 3: Declaration of Cedric Graham]. Officer Graham has no knowledge of the incident that is the subject of Plaintiff's Complaint. [Doc. 33-2 at ¶ 6]. Officer Graham does not remember the Plaintiff from the time Plaintiff was housed at Lanesboro CI. [Id. at ¶ 6].

Generally, as officers pass out food to inmates, when an inmate holds open the food passage door and the officer is unable to easily resolve the problem, the officer alerts the sergeant on duty for the unit, stands aside, and waits for the sergeant to arrive to address the issue. [Doc. 33-2 at ¶ 8; Doc. 33-1 at ¶ 14]. Officer Graham does not remember having to call the sergeant on duty, Sergeant Anthony Allen, on the morning of December 30, 2015, with respect to the Plaintiff or otherwise. [Doc. 33-2 at ¶ 8]. Officer Graham has never closed a trap door on an inmate's hand or fingers. [Doc. 33-2 at ¶ 10]. Sergeant Allen also has no memory of this alleged incident occurring. He has no memory of responding to any call for help to the Plaintiff's cell or the event being otherwise reported to him. [Doc. 33-2 at ¶¶ 13, 15].

Furthermore, if a use of force event were to happen on Officer Graham's shift, whether he considered it excessive or not, he would have reported it to his supervisor and to the Officer in Charge (OIC). Officer Graham would have also completed a statement for an incident report. [Doc. 33-2 at ¶ 9; Doc. 33-1 at ¶ 16]. Officer Graham did not report a use of force event and did not complete a statement for an incident report with respect to the alleged incident. [Doc. 33-2 at ¶ 9]. Further, if Sergeant Allen had received a report of a use of force incident, he would have immediately reported it to his Unit Manager, if present at the prison, or to the OIC. [Doc. 33-1 at ¶ 17]. Sergeant Allen does not remember Officer Graham reporting any use of force incident to him involving the Plaintiff. Sergeant Allen also does not remember reporting such an incident to Sergeant Allen's Unit Manager or to the OIC. [Doc. 33-1 at ¶ 18]. Further, a search of prison records reveals that no incident report exists for this alleged incident. [Doc. 33-3 at ¶ 7: Declaration of Melissa Smith].

Inmates are required to be seen by medical staff after a "use of force" incident and after an accident involving an injury to an inmate. [Doc. 33-3 at ¶ 11]. Had a use of force incident been reported, Sergeant Allen would have ensured the inmate was evaluated by medical staff and a medical record would have been made. [Doc. 33-1 at ¶ 19; Doc. 33-3 at ¶ 11]. Sergeant

8

Allen does not remember asking for a medical evaluation for Plaintiff on the morning of December 30, 2015. [Doc. 33-1 at ¶ 19].

Melissa Smith is a Nurse Administrator at Lanesboro CI. [Doc. 33-3 at ¶ 4]. Ms. Smith has reviewed the Plaintiff's medical records for the period December 1, 2015 to June 14, 2016. It is evident from this review that Plaintiff knew how to request medical assistance; he requested and received medical care several times during that period. [Doc. 33-3 at ¶ 12]. None of the Plaintiff's records for the period December 1, 2015 to June 14, 2016 made any reference to a hand or finger injury during that time. There is no medical record or record of a visit or request for medical care from Plaintiff for the period from December 30, 2015 through January 4, 2016. [Doc. 33-3 at ¶ 8]. There is also no record of a sick call request, emergency request, or use of force or accident examination relating to Plaintiff's fingers. [Doc. 33-3 at ¶ 12]. The first clinical encounter report after the date of the alleged incident was from care the Plaintiff received on January 5, 2016. [Doc. 33-3 at ¶ 8]. On this date, the Plaintiff complained of frequent urination and needing a medication refill. [Doc. 33-3 at 6]. There is no mention of any injury to Plaintiff's hand or finger in this record. [See id.]. Plaintiff had another clinical encounter on January 21, 2016. At this time, Plaintiff sought treatment for an ingrown toenail, broken eyeglasses, and a medication refill.

[Doc. 33-3 at 7].  Again, there was no reference to or complaint of any injury to the Plaintiff's hand or finger.  [Doc. 33-3 at ¶ 9; see Doc. 33-3 at 7].

On February 14, 2016, Plaintiff filed a grievance regarding the alleged incident.  [Doc. 33-1 at ¶ 11 (citing Doc. 33-1 at 14)].  In his grievance, the Plaintiff contends that he told Sergeant Allen of the incident the "next day" after it allegedly occurred.  [Doc. 33-1 at ¶ 21 (citing Doc. 33-1 at 14)]. Sergeant Allen does not remember the Plaintiff telling him about the incident the "next day."  Further if the Plaintiff had made such a report, Sergeant Allen would have reported the incident and an investigation would have been conducted.  [Doc. 33-1 at ¶ 21].  Sergeant Allen also reviewed the shift logs from the time period in question.  On the "next day," which would have been the morning of December 31, 2015, Sergeant Allen was working overtime and was not assigned to Anson Unit.  Rather, he was assigned to the "Corridor," which means he was responsible for monitoring a hallway relatively far from Anson Unit.  Sergeant Allen does not remember going to Anson Unit on December 31, 2015, had no reason to go there, and, in fact, would have faced reprimand for abandoning his post if he had.  [Doc. 33-1 at ¶ 22].

With respect to Plaintiff's claim of "video proof" of the incident, there is no such proof.  Video footage from the stationary cameras mounted in the

facility "spools" onto digital storage. When the storage is full, the video footage is overwritten chronologically with the oldest footage overwritten by newer footage. [Doc. 33-4 at ¶ 8: Declaration of Edith Fultz]. Without a request from an officer investigating an incident, the footage is not preserved. Footage from high traffic areas is generally preserved for approximately two weeks, while footage from lower traffic areas is preserved for no longer than four weeks. [Doc. 33-4 at ¶ 8]. Because there was no use of force incident reported and no investigation conducted, no video footage was preserved. [Doc. 33-2 at ¶ 11; see Doc. 33-4 at ¶ 10]. Plaintiff filed his grievance on February 11, 2016. [Doc. 33-4 at ¶ 11]. Video footage from December 30, 2015 would have necessarily been overwritten by that time and could no longer be retrieved. [Doc. 33-4 at ¶ 11]. Further, even if video footage could have been retrieved, the location and angles of the cameras in that area would not have captured the interaction between Officer Graham and the Plaintiff at the food passage door. [Doc. 33-4 at ¶ 14].

As stated above, Plaintiff did not come forward with anything other than mere allegations (and a few irrelevant documents) to defeat Officer Graham's motion. As such, the Court may only consider Officer Graham's forecast of evidence for purposes of this motion.

## IV. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

12

Here, the Plaintiff alleges that Officer Graham used excessive force in slamming Plaintiff's cell "trap door" on Plaintiff's finger. The evidentiary forecast before the Court, however, does not support such event as having occurred. Taking the Plaintiff's filings in the light most favorable to him and giving Plaintiff deference in light of his proceeding *pro se*, merely shows that Plaintiff broke his finger on December 30, 2015. The thrust of Plaintiff's filings is that the Defendant has failed to refute Plaintiff's allegations. That is not Defendant's burden. Plaintiff has presented no forecast of evidence in response to Defendant's evidence to create a genuine issue of fact for trial. As such, Officer Graham is entitled to judgment as a matter of law.

## V. CONCLUSION

For all the foregoing reasons, Defendant FNU Graham's motion for summary judgment is granted.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that Defendant FNU Graham's Motion for Summary Judgment [Doc. 33] is **GRANTED**. The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED.**

Signed: September 5, 2019

Martin Reidinger
United States District Judge